**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BRITTANY N. COLEMAN,**<br><br>Plaintiff,<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>Defendant. | **Civil Action No. 15-8839 (ES)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Before the Court is Brittany N. Coleman's ("Plaintiff") appeal of the Commissioner of Social Security's (the "Commissioner" or "Defendant") decision denying Plaintiff's application for Supplemental Security Income Benefits ("SSIB") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1381, *et seq.* (*See* D.E. No. 1). The Court has subject-matter jurisdiction under 42 U.S.C. §§ 1383(c)(3) & 405(g). The Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons discussed below, the Court VACATES and REMANDS the decision of the Commissioner.

**I.      Factual and Procedural Background**

On May 3, 2012, Plaintiff filed an application for SSIB, alleging disability beginning November 30, 2010. (D.E. No. 7, Administrative Record ("R.") at 164–70). The application was initially denied on July 20, 2012 (*id.* at 80) and denied again on reconsideration on May 3, 2013, (*id.* at 91). Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Barbara Dunn ("ALJ Dunn") on May 27, 2014. (*See id.* at 24–68). ALJ Dunn issued a decision on August 18, 2014, ruling that Plaintiff was not disabled within the meaning of the Act at any

time through the date of her decision. (*Id.* at 8–23). Plaintiff appealed ALJ Dunn's decision and on October 21, 2015, the Appeals Council issued a final decision affirming ALJ Dunn's ruling and denying Plaintiff SSIB. (*Id.* at 1–6).

Plaintiff then filed the instant appeal. (*See* D.E. No. 1). The general contentions of the brief in support of appeal (D.E. No. 10 ("Pl. Mov. Br.")) are that the Commissioner (1) failed to analyze 20 C.F.R. 404, Subpart P, Appendix 1, § 12.05C[1] and all applicable evidence supporting a finding of intellectual disorder (*see id.* at 19; D.E. No. 14 at 1); (2) "failed to evaluate, weigh, and incorporate in the residual functional capacity the opinions of multiple acceptable medical sources" (*see* Pl. Mov. Br. at 10); and (3) erred by not taking complete vocational testimony (*see id.* at 20–21). Defendant filed an opposition brief (D.E. No. 13), to which Plaintiff replied (D.E. No. 14).

## II. Legal Standards

### A. Standard Governing Benefits

To receive SSIB, a claimant must show that he is "disabled" within the Act's definition. 42 U.S.C. § 1382(a). Disability is defined as the inability to "engage in any substantial gainful

---

[1] At the time ALJ Dunn rendered her decision, Listing 12.05C provided:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. On September 26, 2016, the Social Security Administration amended the listing to substitute the label "Intellectual Disability" with "Intellectual Disorder" to avoid confusing use of the term "Disability." 81 Fed. Reg. 66138, 66150 (Sept. 26, 2016). The amendments also eliminated sub-listing 12.05C, incorporating its requirements into other subsections of Listing 12.05. *See id.*

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The individual's physical or mental impairment, furthermore, must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 1382c(a)(3)(B).

"The Commissioner uses a five-step process when making disability determinations . . . ." *Dellapolla v. Comm'r of Soc. Sec.*, 662 F. App'x 158, 160 (3d Cir. 2016) (citing 20 C.F.R. §§ 404.1520 & 416.920). "The claimant bears the burden of proof for steps one, two, and four [and the] Commissioner bears the burden of proof for the last step." *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). If the determination at a particular step is dispositive of whether the claimant is or is not disabled, the inquiry ends. *See* 20 C.F.R. § 416.920(a)(4). The Court details the steps below.

***Step One***. First, the claimant must show that he has not engaged in any substantial gainful activity since the onset date of his severe impairment. 20 C.F.R. §§ 416.920(a)(4)(i) & 404.1520(a)(4)(i). If an individual engages in substantial gainful activity, he is not disabled under the regulation, regardless of the severity of his impairment or other factors such as age, education, and work experience. 20 C.F.R. §§ 416.920(b) & 404.1520(b).

***Step Two***. Second, the claimant must show that his medically determinable impairment or a combination of his impairments was "severe" as of the date last insured ("DLI"). 20 C.F.R. §§ 416.920(a)(4)(ii) & 404.1520(a)(4)(ii). A "severe" impairment significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 416.920(c) & 404.1520(c). An "impairment or combination of impairments" is not "severe" unless it

"significantly limits [the claimant's] physical or mental ability to do basic work activities." *See, e.g.*, *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (quoting 20 C.F.R. §§ 404.1520(c) & 416.920(c)).

*Step Three*. Third, the claimant must show, based on medical evidence, that as of the DLI, his impairments met or equaled an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 416.920(a)(4)(iii) & 404.1520(a)(4)(iii).

*Step Four*. Fourth, the claimant must show that, as of the DLI, he lacked the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv) & 404.1520(a)(4)(iv); *see, e.g.*, *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If as of the DLI the claimant lacked the RFC to perform his past relevant work, the analysis proceeds. *See, e.g., id.* at 429.

*Step Five*. Finally, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on his age, education, work experience, and RFC. 20 C.F.R. §§ 416.920(a)(4)(v) & 404.1520(a)(4)(v). If the Commissioner finds that the claimant is capable of performing jobs that exist in significant numbers in the national economy, SSIB will be denied. *See id.*

**B.      Standard of Review**

The Court "exercise[s] plenary review over legal conclusions reached by the Commissioner." *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). But "[t]he findings of the Commissioner . . . as to any fact, *if supported by substantial evidence*, shall be conclusive . . . ." 42 U.S.C. § 405(g) (emphasis added). "Substantial evidence" is at least more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Chandler*, 667 F.3d at 359. And although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea*, 370 F.3d at 360.

As observed above, the Court is bound by the ALJ's findings of fact if supported by substantial evidence—"even if [the Court] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006). The Court cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

However, "[s]ince . . . [an] ALJ cannot reject evidence for no reason or for the wrong reason . . ., an explanation from the ALJ [indicating] the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981); *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence."). And this is particularly important where the ALJ "has rejected relevant evidence or when there is conflicting probative evidence in the record." *Cotter*, 642 F.2d at 706. Notably, that rule "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of [the rule] is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett*, 220 F.3d at 120). Therefore, an "ALJ's failure to explain his implicit rejection of [probative and supportive]

5

evidence or even to acknowledge its presence [amounts to] error." *Cotter*, 642 F.2d at 707 & n.10 (rejecting "ALJ's bare recital of the boilerplate language that he 'carefully considered all the testimony . . . and the exhibits,'" and finding that the ALJ erred when he did not mention, or explain his implicit rejection of, medical expert testimony that supported claimant's claim and contradicted the evidence accepted by the ALJ); *Kennedy v. Richardson*, 454 F.2d 376 (3d Cir. 1972) (vacating ALJ's decision because it failed to afford an explanation why the ALJ rejected medical evidence that supported the claimant and that was inconsistent with the ALJ's finding).

### III. ALJ Dunn's Decision

At Step One, ALJ Dunn concluded that Plaintiff had "not engaged in substantial gainful activity since April 30, 2012, the application date. . . ." (R. at 13).

At Step Two, ALJ Dunn concluded that Plaintiff suffered from several severe impairments: "depression; anxiety; leg length discrepancy; status post femur surgery; history of asthma; attention deficit disorder; sickle cell positive; scoliosis; and right leg arthralgia." (*Id.*).

At Step Three, ALJ Dunn found that Plaintiff did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the regulations. (*Id.* at 13). Particularly, ALJ Dunn noted that after considering section 1.04 for back disorders, the evidence did not establish the requisite evidence of "nerve root compression, spinal arachnoiditis or lumbar spinal stenosis." (*Id.*). Further, ALJ Dunn noted that she considered section 1.02 for joint dysfunction, but the evidence did "not demonstrate that the claimant has a degree of difficulty in ambulating . . . nor does the evidence establish gross anatomical deformity or findings of joint space narrowing, bony destruction or ankylosis of a weight bearing joint." (*Id.*). With respect to Plaintiff's asthma, ALJ Dunn observed that there was "no evidence of asthma exacerbation or pulmonary testing in the record." (*Id.*).

As to Plaintiff's mental impairments, ALJ Dunn stated that she considered them "singly and in combination," but found that they did not meet or medically equal the criteria of listings 12.04 and 12.06. (*Id.* at 14). ALJ Dunn first noted that Plaintiff did not meet the criteria of "paragraph B." (*Id.*). Particularly, ALJ Dunn found that Plaintiff 1) had moderate-restrictions in activities of daily living because she "lives alone and is independent in personal care, but dependent upon her mother for meals;" 2) had moderate-restrictions in social functioning, given that although she reported social isolation, she has a boyfriend, attends and enjoys church, and was "engaged and cooperative at examinations;" 3) exhibited "moderate difficulties" with respect to concentration and memory during examinations; and 4) had experienced no episode of decompensation that had an extended duration. (*Id.*).

ALJ Dunn also found that Plaintiff did not satisfy "paragraph C" criteria because "the evidence fails to establish the presence of the 'paragraph C' criteria. She does not require a supportive living environment." (*Id.*).

At Step Four, ALJ Dunn found that Plaintiff "ha[d] the residual functional capacity to perform a reduced range [of] sedentary work as defined in 20 CFR 416.967(a)." (*Id.*). ALJ Dunn observed that Plaintiff "is able to walk or stand up to two hours in an eight-hour workday with standing and walking limited to 30 minute increments; she is able to sit up to six hours with the ability to stand for one minute after each hour." (*Id.*). Further, ALJ Dunn found that Plaintiff was "able to frequent[ly] climb ramps, stairs, frequently balance, kneel, stoop, crouch, crawl." (*Id.*). However, Plaintiff was limited to "carrying, pushing and pulling" no more than 10 lbs; "can do no climbing of ladders, ropes or scaffolds;" can't be exposed to "hazards, such as heights or dangerous machinery;" "cannot withstand concentrated exposure to dusts, flumes, [sic] gasses;" and was "limited to simple routine work and no more than occasional public and co-worker contact." (*Id.*

7

at 14–15).

ALJ Dunn briefly discussed Plaintiff's IQ scores. Particularly, she noted that Plaintiff was tested at age 16 and achieved an IQ of 90, but in April 2014 medical examiner Dr. Paul Fulford found a listing-level IQ score of 67. (*Id.* at 15). ALJ Dunn pointed out that in July 2004 Disability Determination Service consultative examiner Dr. David Gelber found an IQ of 82, and then proceeded to find that Dr. Fulford's assessment and opinion were not persuasive. (*Id.*). Particularly, ALJ Dunn stated that Dr. Fulford's assessment was "inconsistent with the record as a whole, including the claimant's ability to attend computer school and work as a secretary (she indicated that she lost that job because she could nott [sic] move fast enough (as opposed to mental incapability)." (*Id.* at 15–16). As a result, ALJ Dunn afforded "little weight" to Dr. Fulford's assessment. (*Id.* at 16).

ALJ Dunn then found that Plaintiff had no past relevant work because her "short-term jobs were not performed at a substantial level of gainful activity." (*Id.* at 17). She, thus, proceeded to Step Five.

At Step Five, ALJ Dunn noted that Plaintiff fell within the "younger individual age 18-44" category and had a high school education. (*Id.*). ALJ Dunn relied on the testimony of a vocational expert, who testified that based on Plaintiff's age, education, and RFC, Plaintiff "would be able to perform the requirements of representative occupations such as final assembler of small products, unskilled and sedentary, 218,000 nationally; envelope addresser, unskilled SVP 2 and sedentary, 90,000 nationally; order clerk unskilled, SVP2, sedentary, 208,000 nationally." (*Id.* at 18). Therefore, ALJ Dunn ruled that Plaintiff was not disabled from April 30, 2012, through the date of the decision. (*Id.* at 19).

**IV.    Discussion**

As noted above, Plaintiff argues that ALJ Dunn erred because she did not evaluate Listing 12.05C and all applicable evidence when conducting the disability determination, and as a result, made no intellectual disorder findings. (*See* Pl. Mov. Br. at 19; D.E. No. 14 at 1). Relatedly, Plaintiff also argues that ALJ Dunn wrongly rejected Dr. Fulford's assessment, which found that Plaintiff had a listing-level IQ score of 67. (Pl. Mov. Br. at 19–20; D.E. No. 14 at 2).

Because the Court agrees and finds that ALJ Dunn erred when conducting her Step Two and Step Three analysis, the Court will vacate the Commissioner's decision and will remand for further proceedings. Therefore, the Court does not address Plaintiff's other arguments for remand. *See Butler v. Astrue*, No. 09-3252, 2010 WL 3908627, at *4 (D.N.J. Sept. 28, 2010) ("Because the Step Three analysis is sequential, and a reconsideration of Step Three may obviate or otherwise affect the final two steps, the Court will not consider Plaintiff's other arguments."); *Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x. 155, 156–57 (3d Cir. 2008).

To meet or equal Listing 12.05C a claimant must "i) have a valid verbal, performance or full scale IQ of 60 through 70, ii) have a physical or other mental impairment imposing additional and significant work-related limitations of function, and iii) show that the [intellectual disorder] was initially manifested during the developmental period (before age 22)." *See Markle v. Barnhart*, 324 F.3d 182, 187 (3d Cir. 2003); *Myers v. Comm'r of Soc. Sec.*, 684 F. App'x 186, 189 (3d Cir. 2017).

As a starting point, the fact that ALJ Dunn did not specifically mention listing 12.05C, alone, is not error. As noted earlier, the Third Circuit requires "the ALJ to set forth the reasons for his decision," not to "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citation and internal quotation

marks omitted). Thus, an ALJ commits no error by failing to specifically mention a listing so long as the ALJ sufficiently develops the record and explains her findings so as to permit meaningful review. *See Jones*, 364 F.3d at 505 (affirming the ALJ's decision, even though the ALJ did not specify any listing).

Here, however, ALJ Dunn's decision falls short of this standard. Despite recognizing the possibility that Plaintiff's IQ score, as provided by Dr. Fulford's assessment, could "possibly meet a listing" (*see* R. at 51; *see also id.* at 15), ALJ Dunn did not analyze Plaintiff's possible intellectual disorder impairment at either Step Two or Step Three. (*See* R. at 13–14); *cf. Ramos v. Berryhill*, No. 15-8771, 2017 WL 3393806, at *3 (D.N.J. Aug. 7, 2017) ("An ALJ must consider all impairments which a claimant alleges or for which the ALJ receives evidence.") (citing 20 C.F.R. § 404.1512(a)). The only discussion that could potentially be considered as analyzing Listing 12.05C appears in a single, short paragraph of ALJ Dunn's RFC determination, which notes that Plaintiff

> was tested at age 16 and achieved an IQ of 90, placing her in the low average range (Exhibit 13f). Dr. Fulford, a consultant arranged by claimant's representative, found an IQ at listing level in April 2014 (67), but the Disability Determination Services consultative examiner found an IQ at low average (82) in July 2004 (Exhibits 15F and 16F). This was consistent with the school record. Dr. Fulford's explanation of the difference between his findings and the school findings is acknowledged but it is not found to be persuasive. I also find the doctor's assessment inconsistent with the record as a whole, including the claimant's ability to attend computer school and work as a secretary (she indicated that she lost that job because she could nott [sic] move fast enough (as opposed to mental incapability). According, [sic] I afford little weight to the doctor's assessment.

(*Id.* at 15–16). Thus, it appears that ALJ Dunn did not fully analyze listing 12.05C because she found that Plaintiff did not have a valid verbal, performance or full scale IQ of 60 through 70.

To meet the requirements of the first prong of Listing 12.05C, the Regulations require only

10

that one valid IQ score be in the required range. *See Williams v. Sullivan*, 970 F.2d 1178, 1184 (3d Cir. 1992). An ALJ may reject the results of an IQ test which are shown to be invalid. For instance, an ALJ "may reject scores that are inconsistent with the record," *Markle v. Barnhart*, 324 F.3d 182, 186 (3d Cir. 2003), or where there is evidence that the claimant was malingering or deliberately attempting to distort the results during the test administration, *see, e.g.*, *Lax v. Astrue*, 489 F.3d 1080, 1087 (10th Cir. 2007). In assessing the validity of an IQ score, i.e., whether the score is "an accurate reflection of [a claimant's] intellectual capabilities," *Lax*, 489 F.3d at 1087, the ALJ is to consider the entire record before her and explain her "conciliations or rejections," *see Burnett*, 220 F.3d at 122; *Markle*, 324 F.3d at 186. But an ALJ may not reject an IQ score based on "personal observations of the claimant and speculative inferences drawn from the record." *Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000) (noting that an ALJ may not reject medical evidence "due to his or her own credibility judgments, speculation or lay opinion").

For example, in *Markle* the District Court affirmed the ALJ's rejection of a listing-level IQ score in light of the claimant's "ability to pay his own bills, add and subtract, use an ATM machine and to take care of all his own personal needs; [claimant's] ability to identify and administer his medication; his previous jobs; his obtaining a GED; and the positive evaluations of . . . the psychologist." 324 F.3d at 186. Rejecting this holding, the Court of Appeals noted that the record did not provide a basis for rejecting the IQ score because there "was no expert opinion of a psychologist or medical person to contradict" the psychologist's IQ findings. *Id.* at 187; *see also Coogan v. Astrue*, No. 08-1387, 2009 WL 512442, at *6 (D.N.J. Feb. 27, 2009) (holding that the ALJ erred when ALJ recognized multiple IQ scores but found only one to be accurate without providing a clear explanation for the rejection of a listing-level IQ score); *Velardo v. Astrue*, No. 07-1604, 2009 WL 229777, at *9 (W.D. Pa. Jan. 29, 2009) (noting that the ALJ erred when he

11

failed to expressly indicate whether earlier IQ scores were valid, and instead simply stated that he found the scores to be "inconclusive").

Here, there are several issues with ALJ Dunn's decision to discount the result of the IQ test conducted by Dr. Fulford. First, ALJ Dunn never expressly discussed the validity of Dr. Fulford's IQ score results. (*See* R. at 15). Rather, ALJ Dunn apparently gave this score less weight after contrasting it with the score from Dr. Gelber's test, which she stated "was consistent with the school record." (*See id.*). Particularly, Dr. Fulford opined that Plaintiff's school IQ test may have been unreliable, noting that "frequently school testing scores are higher, due to the familiar setting, possible previous acquaintance with the school psychologist and frequent breaking up of testing into small manageable segments, rather than a onetime sitting." (*See id.* at 491). ALJ Dunn conclusorily stated that Dr. Fulford's explanation was "acknowledged but it is not found to be persuasive." (*Id.* at 15). But neither Dr. Gelber's opinion nor any other medical evidence in this record opine on the subject, much less directly contradict Dr. Fulford's opinion and explanation for why Plaintiff's school IQ score was higher than the later tests. (*See generally id.*). In fact, Dr. Gelber's assessment, conducted after Dr. Fulford's exam at the request of ALJ Dunn, does not mention Dr. Fulford's examination at all and states that "[n]o reports from past examinations or any other information accompanied this referral." (*See id.* at 493–98). Thus, it appears that ALJ Dunn's decision to find Dr. Fulford's explanation unpersuasive was based on ALJ Dunn's own lay interpretation of the evidence; i.e., because Dr. Gelber's score was close the school score, it must mean that Dr. Fulford is wrong. However, the Third Circuit has specifically stated that an ALJ may not reject medical opinions based on "his or her own credibility judgments, speculation or lay opinion." *See Morales*, 225 F.3d at 318; *Diaz v. Comm'r of Soc. Sec.*, No. 07-5751, 2008 WL 5244189, at *4 (D.N.J. Dec. 12, 2008) ("The Court finds that the ALJ was in error to disregard

12

the psychiatrist's assessment based on his own speculative determinations as opposed to contradictory medical information.").

Second, ALJ Dunn also noted that Dr. Fulford's assessment was "inconsistent with the record as a whole, including the claimant's ability to attend computer school and work as a secretary. . . ." (R. at 15–16). But this analysis is also flawed. For one, it appears that ALJ Dunn did not actually consider the entire pertinent record and omitted discussion of certain relevant and probative evidence. *See Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203-04 (3d Cir. 2008) (noting that while the ALJ need not address every piece of evidence, the "ALJ may not reject pertinent or probative evidence without explanation"). For example, exhibits 11F and 12F contain educational assessments discussing Plaintiff's learning limitations and her required accommodations, all near the time when Plaintiff took the school IQ test. (*See* R. at 397–435). Among other things, Plaintiff required extended time and additional breaks when testing; directions, test questions, and instructions could be read to her and could be repeated, clarified or reworded; and was permitted to use a calculator. (*Id.* at 424). Additionally, the learning disabilities teacher consultant Joanne Sanders noted that Plaintiff was reported to be experiencing difficulties with retaining and processing information (*id.* at 411–12), and Dr. Ira Morganstern noted that Plaintiff "has to be re-focused frequently. . . needs redirection and easily forgets chores or recent instructions" and that "[t]hese problems have been true for years, noticeable since the sixth grade" (*id.* at 434). ALJ Dunn erroneously ignored all this evidence and failed to analyze how it interacted with Dr. Fulford's findings that the contemporaneous school IQ test score may have been unreliable. *See Cotters*, 642 F.2d at 707 ("The ALJ's failure to explain his implicit rejection of [probative and supportive] evidence or even to acknowledge its presence [amounts to] error."); *Gibson v. Astrue*, 12-1292, 2013 WL 1163366, at *11 (D.N.J. Mar.19, 2013) ("Ultimately, without

the ALJ even mentioning obviously probative evidence at any stage of the evaluation, the Court has no way of knowing whether it 'was not credited or simply ignored,' which makes a proper review of the record impossible.") (quoting *Cotter*, 642 F.2d at 705).

Moreover, there is no evidence that Plaintiff ever worked as a secretary or even that she ever did any skilled or semi-skilled secretarial work. (*See generally* R.). Rather, the record indicates that Plaintiff has been able to maintain only short-term unskilled jobs. (*See id.* at 213). The last job Plaintiff held—which she obtained through a temporary staffing agency and apparently forms the basis for ALJ Dunn's conclusion that Plaintiff was a secretary—involved Plaintiff working at a secretary's desk filing documents (i.e., doing unskilled work). (*See id.* at 30). And importantly, Plaintiff worked at this job for <u>one day</u>. (*Id.*). Although Plaintiff indicated that she was told to not return to this job because she could not move fast enough (as opposed to mental incapability), ALJ Dunn's opinion simply fails to explain how the fact that Plaintiff worked at this position for a single day, filing documents, says anything of Plaintiff's intellectual capabilities. (*See id.*).

Further, with respect to Plaintiff's ability to attend computer school, ALJ Dunn's opinion does not cite any evidence to support this finding. (*See id.* at 16). After painstakingly examining the almost 500-page record, it appears that ALJ Dunn drew this conclusion from a one-line notation on the intake form from an October 2011 outpatient hospital record. (*See id.* at 469 (stating that Plaintiff was "attending Drake School for computers")). However, this notation is the <u>only</u> mention in the entire record that Plaintiff attended such as school, and nothing in the record appears to indicate that Plaintiff ever actually took and completed any computer courses, or whether she ever even worked with computers. (*See generally id.*). In fact, other contemporaneous sources discussing Plaintiff's education mention only that she completed high school. (*See, e.g.*, *id.* at 303

14

(consultative examiner's 2012 evaluation indicating that Plaintiff completed high school after taking remedial classes, but not mentioning that Plaintiff attended computer school)). And during the hearing Plaintiff testified that she failed her basic skills test when she attempted to go to college, and that she took a single college remedial course, which she also failed. (*See id.* at 32). Yet, ALJ Dunn ignored and failed to weigh any of this evidence without any explanation.

Finally, to the extent that ALJ Dunn relied on Plaintiff's activities of daily living to discredit Dr. Fulford's findings, it cannot be said that the evidence in this record necessarily invalidates the listing-level IQ score at issue. *See Markle*, 324 F.3d at 184–87; *Meadows v. Berryhill*, No. 17-0195, 2018 WL 1519043, at *4 (W.D. Pa. Mar. 28, 2018) (noting that activities such as "using public transportation, preparing simple meals, grocery shopping, and personal care are not necessarily inconsistent with low intellectual functioning"); *see also Brown v. Sec'y of HHS*, 948 F.2d 268, 270 (6th Cir. 1991) (rejecting the Commissioner's argument that a claimant's full scale IQ of 68 was inconsistent with, among other things, his driver's license and work history as a truck driver, limited literacy and sixth grade education, and ability to make change, do laundry, and clean his room); *cf. Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986) (holding that the ALJ did not have to accept scores in the listing range for a claimant who had a two-year college degree, was enrolled in a third year of college, and had a history of several skilled jobs including teaching algebra at a private school.).[2]

---

[2] Defendant raises various arguments, and provides explanations for evidence, not relied upon by ALJ Dunn in her analysis. As such, Defendant's arguments contradict the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943), which requires a reviewing court to limit its consideration to what is plain on the face of the administrative agency's decision; i.e., the Court may not "read into" the decision reasoning or conclusions which are not clearly stated. *See, e.g.*, *Fargnoli v. Halter*, 247 F.3d 34, 43–44 & n.7 (3d Cir. 2001) (concluding that the district court had erred when it recognized the ALJ's failure to consider all relevant and probative evidence, but attempted to rectify this error through its own analysis, thereby violating the *Chenery* requirement that "the grounds upon which an administrative order must be judged are those upon which the record disclosed that its action was based"); *Stockett v. Comm'r of Soc. Sec.*, 216 F. Supp. 3d 440, 459 (D.N.J. 2016) (rejecting the Commissioner's "post hoc justification for the ALJ's decision").

In short, ALJ Dunn failed to properly develop the record, failed to discuss potentially probative evidence, failed to fully explain her findings, and thus, the Court is unable to conduct a meaningful review. *See Jones*, 364 F.3d at 505. Consequently, the Court vacates ALJ Dunn's decision and remands the case "for a discussion of the evidence and an explanation of reasoning supporting a determination" that Plaintiff does or does not have an intellectual disorder impairment and whether she meets the requirements for the relevant listing. *See Burnett*, 220 F.3d at 120. On remand, ALJ Dunn should set out specifically what evidence indicates that Plaintiff does or does not meet each element required to show intellectual disorder, and should fully explain her findings. If necessary, ALJ Dunn should reopen the record for additional evidence.[3]

## IV. Conclusion

For the foregoing reasons the Court VACATES the decision of the Commissioner and REMANDS this matter to the Commissioner for further proceedings in accordance with this Opinion. An appropriate Order will follow.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**

---

[3] Although the Court does not reach Plaintiff's other arguments, the Court notes that on remand ALJ Dunn should endeavor to fully examine and develop the relevant evidence when evaluating Plaintiff's RFC. This includes, but should not be limited to, Plaintiff's memory issues highlighted by the school records (*see, e.g.*, R. at 411–12 & 434), Plaintiff's working memory assessments by Dr. Fulford and Dr. Gelber (*see id.* at 491 & 496), and any other pertinent evidence in the record. And any intellectual or memory limitation issues that the ALJ finds should be posed to the vocational expert.

16